AMERICAN SURETY COMPANY OF NEW YORK, Appellant,

v.

Price B. WILLIFORD and Duren N. Sleyster, d/b/a Quick-Way Construction Company and Quick-Way Excavating Company, et al., Appellees.

No. 15681.

United States Court of Appeals Eighth Circuit.

April 15, 1957.

Jack G. Beamer, Kansas City, Mo. (Tom J. Stubbs and Stubbs, McKenzie, Williams & Merrick, Kansas City, Mo., were with him on the brief), for appellant.

Sam Mandell, Kansas City, Mo. (Clancy D. Tull and Arthur C. Popham, Kansas City, Mo., were with him on the brief), for appellees.

Before JOHNSEN, VOGEL, and VAN OOSTERHOUT, Circuit Judges.

VAN OOSTERHOUT, Circuit Judge.

This is an appeal from judgment determining appellant, American Surety Company of New York, was bound by an oral contract of insurance indemnifying Quick-Way Construction Company against motor vehicle liability, and that such insurance was in effect on April 19, 1955, at 4:30 P.M. when a collision occurred between one of Quick-Way's vehicles and an automobile owned and operated by Harry F. Bland. Jurisdiction, based upon diversity of citizenship and the jurisdictional amount, is established.

This action for a declaratory judgment was brought by appellant against Williford and Sleyster, a partnership, doing business under the name of Quick-Way Construction Company, hereinafter called Quick-Way, Marion K. Miller, the driver of Quick-Way's vehicle, and Pearl and Harry F. Bland. The Blands had commenced an action in the Missouri state court against Quick-Way and its driver, Miller, to recover damages alleged to have been caused by Miller's negligent operation of a vehicle belonging to Quick-Way, on April 19, 1955, at 4:30 P.M. It is established that a collision occurred between the Quick-Way vehicle and Bland's car at the time stated.

Appellant attached to its petition in the present action a policy of automobile liability insurance issued to Quick-Way

dated May 12, 1955, effective April 19, 1955, at 5:15 P.M.; stated that it is not liable on said policy or any other insuring agreement to any of the appellees by reason of the collision occurring between the Quick-Way vehicle and Bland's car on April 19, 1955, at 4:30 P.M.; and asked the court so to declare. Quick-Way, in its answer and counterclaim, asserted that the policy issued May 12 does not truly evidence the contract of insurance entered into between it and the appellant, and that appellant, through its authorized agents, agreed to insure Quick-Way for a term of one year commencing March 30, 1955, with comprehensive automobile liability insurance affording the same protection provided by a Travelers policy expiring on that date. Quick-Way asked that the court adjudicate that appellant is obligated by its oral insurance contract to defend the action commenced by the Blands and to indemnify against any judgment the Blands might obtain against Quick-Way. The Blands' answer is to the same general effect.

Quick-Way previously carried its automobile liability insurance in the Travelers Indemnity Company. In evidence is comprehensive automobile liability policy issued by Travelers expiring March 30, 1955, covering all automobiles owned or hired by Quick-Way in the amounts of $50,000, $100,000, and $10,000.

Early in 1955, Quick-Way, because of its loss experience, had difficulty in finding a carrier for its workmen's compensation insurance. Ultimately Quick-Way contacted the Hammond Insurance Agency, operated by Hammond and Stark, with whom Quick-Way had no previous business relations. The Hammond Insurance Agency found an insurance carrier for the workmen's compensation insurance. The Hammond Agency made it clear that it would be necessary for Quick-Way to give it all of Quick-Way's insurance business in order to obtain the workmen's compensation insurance. Quick-Way reluctantly agreed to this demand. Quick-Way advised the Hammond Agency of its other insurance

needs, including the comprehensive automobile liability policy then carried by Travelers, above described.

The Hammond Agency is a general agent of the appellant, and it is stipulated that the Hammond Agency has authority to bind risks such as here involved upon behalf of the appellant. Quick-Way contends that in March 1955 an oral contract of insurance was entered into with appellant, through the Hammond Agency, to duplicate the automobile liability coverage of the Travelers policy, the insurance to be effective upon the expiration of the Travelers policy on March 30, 1955. The facts will be further developed hereinafter.

The trial court found that appellant entered into an oral contract for comprehensive automobile liability insurance with Quick-Way, providing coverage of $50,000, $100,000, and $10,000, for a term of one year commencing March 31, 1955, and that such policy was in force on April 19, 1955, at 4:30 P.M. when the collision between Bland's automobile and the Quick-Way vehicle occurred. Appellant contends that such finding is inconsistent with the pleadings and proof, that the issue of an oral contract of insurance was not raised by the pleadings, and that it was "surprising, prejudiced, and unfair" to the parties to determine the case upon that issue. Such contention is without merit.

In a pre-trial order filed over two months before the commencement of the trial, the court, after setting out in some detail Quick-Way's contention that it had an oral contract of insurance, states:

"The issues for determination at the time of trial will be whether the policy of insurance attached to plaintiff's complaint is the only contract and agreement validly existing between plaintiff and defendants Williford and Sleyster, or whether plaintiff's authorized agents entered into a binding oral contract of insurance with said defendants as above referred to."

We are satisfied that the trial court properly interpreted the issues raised by the pleadings. In any event the appellant by the pre-trial order was fully advised of the presence in the case of the oral contract of insurance issue, and is in no position to claim that it was misled as to the issues to be tried.

Appellant next contends that the court erred in considering parol evidence of prior oral negotiations between appellees, Williford and Sleyster, and appellant's agents, Hammond and Stark, in determining the contractual rights and obligations existing between the parties on April 19, 1955, at 4:30 P.M.

It is entirely true that appellant under date of May 12, 1955, issued to Quick-Way the automobile liability policy attached to appellant's petition, purporting to be effective for one year commencing April 19, 1955, at 5:15 P.M. Such policy provides coverage of $25,000, $50,000, and $5,000, and was delivered to Quick-Way about June 1, 1955. Appellant contends that all prior negotiations are merged into the written policy just described, relying upon Wright v. Great Eastern Casualty Co., Mo.App., 206 S.W. 428; Banks v. Clover Leaf Casualty Co., 207 Mo.App. 357, 233 S.W. 78; Commerce Trust Company v. Watts, 360 Mo. 971, 231 S.W.2d 817; Hall v. Missouri Insurance Company, Mo.App., 208 S.W. 2d 830.

The facts in the cases appellant relies upon are clearly distinguishable from those in our present case. We find nothing in the cases cited which would compel the exclusion of the evidence offered by appellees to establish the oral contract of insurance. For example, in Hall v. Missouri Insurance Company, supra, the policy contained a valid provision to the effect that if the insured's age was misrepresented and if insured was over 54 years of age the policy would be void, and the insurer's liability would be limited to the return of premium paid. The insured misrepresented his age, he was over 54 years of age, and the court in accordance with the policy terms limited recovery to return of the premium. The

parol evidence rule is not directly involved in the decision, but the case contains a statement to the effect that preliminary negotiations are merged in the policy issued by the insurer and accepted by the insured. In Appleman, Insurance Law and Practice, Vol. 12, § 7205, page 302, it is stated:

"Generally, oral negotiations or preliminary dealings are merged into a written application for insurance, or into the policy itself when issued which supersedes all negotiations and expresses the final intention of the parties, unless there is a material variance between the executory agreement and the policy as executed."

In our present case there are material variations between the oral contract and the written policy tendered. On June 1, 1955, immediately upon receipt of the written policy, Quick-Way wrote the appellant as follows:

"There was a definite mutual agreement that your insurance would be effective April 1, 1955 when similar coverage of Travelers expired.

\* \* \* \* \* \*

"Your company either delayed issuing, or reissued in the light of developments, and the policy now furnished us does not evidence the insurance mutually agreed upon, and it erroneously provides that such insurance becomes effective April 19, 1955 at 5:15 P.M. instead of as bought and ordered and mutually agreed upon, and it does not set forth the agreed coverage, neither as to effective date nor as to certain other details as to vehicle identification as set forth in the Travelers policy.

" \* \* \* we are requesting that your company promptly send us corrected policy or proper endorsements reflecting correct effective date and details contained in the Travelers policy, including hired and non-owned vehicles."

■ we find nothing in the present record which compels us as a matter of law to conclude that Quick-Way accepted the written policy tendered, which stated on its face that it became operative at 5:15 P.M. on April 19, 1955, as evidencing the contract existing prior to such date and hour. The written policy did not purport to cover the period before 5:15 P.M. on April 19, 1955. Appellant can not, by the mere act of issuing a policy subsequent to the accrual of a claim under a pre-existing oral contract and dating its coverage to a period subsequent to the time of the accrual of the claim, escape liability upon such claim if a valid oral contract of insurance protecting against such claim has been established. It should be noted that Quick-Way is claiming under an oral contract of insurance for one year, not under temporary or interim insurance.

In Preferred Risk Fire Insurance Co. v. Neet, 262 Ky. 257, 90 S.W.2d 39, the court found the oral contract of insurance was not merged into the written policy. The court states 90 S.W.2d at page 43:

"If the agreement is to insure or is for temporary or preliminary insurance, it is merged in the policies subsequently issued if they are accepted by the insured, unless there is a material variance between the terms of the executory agreement and the policy as executed. 32 C.J. 1114; Cooley's Briefs on Ins. p. 514; Svea Fire & Life Ins. Co. v. Foxwell, supra [234 Ky. 95, 27 S.W.2d 675]. But if there is only an attempt to issue a policy in place of an oral contract, such policy does not become valid as a contract by reason of lack of assent thereto by either party and the oral contract continues in force. It cannot be said that the oral contract is merged in a written policy which does not cover all the elements or agreements of the parol contract and does not control as to material errors therein. Couch, § 81; 26 C.J. 52; Franklin Fire Ins. Co. v. Hewitt, 42 Ky. (3 B.Mon.) 231; Springfield Fire & Marine Ins. Co. v. Snowden, 173 Ky. 664, 191 S.W. 439, 441."

■ It seems entirely clear that Quick-Way did not accept the policy tendered as the contract existing between the parties prior to the effective period of the policy. Moreover, section 379.195, V.A.M.S., provides:

"1. In respect to every contract of insurance made between an insurance company * * * and any person, firm or corporation, by which such person, firm or corporation is insured against loss or damage on account of the bodily injury or death or damage to property by accident of any person, for which loss or damage such person, firm or corporation is responsible, whenever a loss occurs on account of the casualty covered by such a contract of insurance, the liability of the insurance company, if liability there be, shall become absolute * * *.

"2. No such contract of insurance shall be cancelled or annulled by any agreement between the insurance company and the assured after the said assured has become responsible for such loss or damage, and any such cancellation or annulment shall be void."

The claim of the Blands, who are parties to this action, arose after the effective date of the alleged oral contract of insurance and before the issuance of the written policy relied upon by the appellant. Under the Missouri statute, above quoted, the insured and the insurer could not, subsequent to the accident, either by voluntary agreement or collusive action, impair any claim of the party injured by the accident against the insurer. The rights of the injured party under the statute accrue on the date of the accident. Pennsylvania Casualty Co. v. Phoenix, 10 Cir., 139 F.2d 823, 827; Hocken v. Allstate Ins. Co., 235 Mo.App. 991, 147 S.W.2d 182, 187.

Under the circumstances of this case the court committed no error in receiv-

ing and considering evidence bearing upon the formation of the oral contract of insurance.

Appellant's final contention is that there is no competent evidence to support the court's finding and conclusion that a binding oral contract of insurance was entered into between the appellant and Quick-Way. It appears to be well settled in Missouri, and generally, that oral contracts of insurance are valid. In order to establish an enforceable oral contract of insurance, there must be a meeting of the minds of the parties thereto on the essential elements of the contract, which are, subject matter, risk insured against, amount of risk, duration of risk, and premium. Robinson v. Franklin Fire Ins. Co., 225 Mo.App. 960, 35 S.W.2d 635, 637; Murphy v. Great American Ins. Co., 221 Mo.App. 727, 285 S.W. 772, 773; Massachusetts Bonding & Ins. Co. v. R. E. Parsons Elec. Co., 8 Cir., 61 F.2d 264, 271, 92 A.L.R. 218; Notes, 15 A.L.R. 995, 69 A.L.R. 559, 92 A.L.R. 232. It is not essential that all the elements of a contract be expressly agreed upon if the intention of the parties to the contract can be gathered from the circumstances of the case. Robinson v. Franklin Fire Ins. Co., supra; Massachusetts Bonding & Ins. Co. v. R. E. Parsons Elec. Co., supra.

In the Massachusetts Bonding & Ins. Co. case this court treats exhaustively the law applicable to oral contracts of insurance in Missouri. There, the oral renewal of an existing policy was involved. Technically we do not have a renewal situation in our present case, as only the existing insurance carrier is in a position to renew. However, our situation here is analogous to a renewal situation. Agent Stark so considered it, stating, "Yes, sir, that we were to renew the coverage instead of the previous agent." In the Massachusetts Bonding & Ins. Co. case, this court quotes with approval the following excerpt from 15 A.L.R. 1011, 61 F.2d at page 268:

" 'It is generally held that agreements to renew need not be as definite as to terms as an agreement to issue a policy, since the agreement will be presumed to have reference to the terms of the existing policy, and these agreements have been upheld where there was no specific agreement as to terms.' "

It seems clear that the parties contemplated that the appellant would provide the same coverage as did the existing Travelers policy. Thus, the existing policy supplies the information as to the terms of the policy contracted for.

We now look to the record to determine whether the trial court's finding that a valid oral contract of insurance was in effect on April 19, 1955, at 4:30 P.M., is supported by substantial evidence. As heretofore stated it is stipulated that the Hammond Agency is a general agent of the appellant and has authority to bind risks such as are here involved. Representatives of the Hammond Agency had discussed this risk with appellant's representative and the automobile liability insurance if contracted for was placed with the appellant. We must, of course, view the evidence and the inferences to be drawn from it in the light most favorable to the appellees. When the evidence is so viewed, there is adequate evidentiary support for the trial court's findings and conclusions.

The appellant's authorized agent knew that Quick-Way's existing automobile policy expired on March 30, 1955. Quick-Way was entirely satisfied with its relations with the Travelers and its agent. A renewal of the Travelers policy had been written, but was cancelled when the Travelers' agent was advised by Quick-Way that it had coverage with the appellant. The shift of insurers was made only because of the urgent insistence of appellant's agent that it be given all of Quick-Way's insurance because of having provided the hard-to-get workmen's compensation insurance. There is evidence that Hammond and Stark had seen the certificate of insurance upon the Travelers policy, and that either Hammond or Stark had received information about the terms of the existing Travelers poli-

cy in a telephone conversation with Agent Tallman representing the Travelers. The Hammond Agency had sufficient information to bind the risk upon the terms of the existing Travelers policy. Hammond testified in part:

"Q. You did receive all kinds of information, though, sufficient to bind this risk at that March 16th meeting, didn't you? A. Yes, we could have bound it."

"Q. Then you had sufficient information without the motor numbers to have bound the policy and given them exactly the same type of coverage they then had, isn't that correct? A. Yes, sir."

Both Williford and Sleyster testified that Hammond and Stark about March 16, 1955, were requested to duplicate the coverage of the Travelers automobile liability policy, and that Hammond and Stark agreed that the automobile liability risk would be bound upon the same terms as the existing Travelers policy, and that appellant's coverage would be effective upon the expiration of the Travelers policy on March 30, 1955. Tallman, the Travelers agent, testified that in March, before the expiration of the Travelers policy, at Sleyster's request, he gave information about the nature of the existing Travelers policy to some one Sleyster called to the telephone and who purported to represent the Hammond Agency. Tallman further testified that upon receiving advice that appellant had assumed the risk he caused the renewal of the existing Travelers policy to be cancelled. Williford and Sleyster testified that after they reported the April 19 accident Stark assured them on a number of occasions that the liability was covered, and that the insurance was effective April 1 and not to worry about it. Such testimony was not denied by Stark and Hammond. Stark's testimony on this subject is, in part:

"Question: Did you at any time tell Mr. Williford or Mr. Sleyster after this accident was reported to you that the insurance had been bound with the American Surety Company of New York? Answer: I presume I told Mr. Sleyster at the time he reported the claim that it had been bound. Q. Do you remember making that answer? A. I don't remember, but if it is there I am sure I did.

\*    \*    \*    \*    \*    \*

"Question: And when Sleyster reported this accident, as you have already testified here, you told him that you had bound him, that you had authority to bind him, in substance? Answer: Well, I imagine I conveyed that. I don't remember that question ever actually came up in our discussion. It was taken for granted. Question: That was the substance of what you told him? Answer: Yes. Q. You testified that way and that is true, isn't it? A. Yes, sir, if it is in there I am sure I testified that way.

"Q. Well, it is there, I just read it. And when these people called up and told you that they had had this accident, you raised no question whatever about them having been covered in this accident, did you? A. No, sir."

There was contradictory testimony supporting appellant's contention that Quick-Way did not contract for insurance with appellant until after the April 19 accident, and that up to that time the amount of coverage had not been agreed upon. It is, of course, the trial court's function to determine the credibility of the witnesses and to resolve disputed questions of fact. The record here warrants a finding and conclusion that the existing Travelers policy was to be the pattern for the oral contract of insurance here involved. Clearly, the Travelers policy afforded ample information as to the essential elements of the insurance contract desired, with the exception of the consideration element. Hammond and Stark were unable to quote the premium due on the coverage contracted for. Quick-Way before the loss was not billed for or advised as to the

amount of premium due. Other insurance which the Hammond Agency provided for Quick-Way was furnished on credit. In the Massachusetts Bonding & Ins. Co. case, supra, the premium was not determined or paid. Nevertheless, this court found an intention to enter into a contract upon credit, and held the oral renewal contract valid. The court states 61 F.2d at page 271:

> "In Murphy v. Great American Ins. Co., 221 Mo.App. 727, 730, 285 S.W. 772, 773, the court stated: '* * * An oral contract of insurance is binding, although the premium is not to be paid at the time of its consummation if credit is given. * * *'

> "In 26 Corpus Juris, 49, it is said: '* * * There must be a consideration for the executory agreement to insure, but an agreement, even implied, to pay the usual premium, will be sufficient to constitute a consideration.' "

In Robinson v. Franklin Fire Ins. Co., supra, it is stated [225 Mo.App. 960, 35 S.W.2d 638]:

> "* * * Payment of the premium was not demanded at the time the insurance was 'bound,' which fact necessarily implies the insurer intended to and did extend credit. * * *"

"Where an oral agreement to insure is entered into, without specifying the premium rate, it is a contract to insure at the customary rates." Appleman, Insurance Law and Practice, Vol. 12, § 7196, page 275.

The court was justified in determining that the oral insurance was contracted for upon credit with the understanding that it would be billed for at the customary rate. It is not likely that the rates charged by Travelers and American Surety Company upon the policy involved in this litigation would vary substantially. We are satisfied that the trial court's finding that the appellant was bound by an oral contract of insurance, providing the same coverage as the previously existing Travelers automobile li-

ability policy, and its further finding that such contract was in effect at the time of the collision between the Quick-Way vehicle and Bland's car on April 19, 1955, at 4:30 P.M., are supported by substantial evidence.

The judgment appealed from is affirmed.